IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JESSICA A. ALEXANDER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL ACTION 11-00442-B |
| | * | |
| MICHAEL J. ASTRUE, | * | |
| Commissioner of Social Security, | * | |
| | * | |
| Defendant. | * | |

ORDER

Plaintiff Jessica A. Alexander ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for child insurance benefits and supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 402, et seq., and 1381, et seq. On June 20, 2012, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 16). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c). (Doc. 18). Oral argument was waived. Upon careful consideration of the administrative record and the arguments and briefs of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.  **Procedural History**

Plaintiff filed applications for child's insurance benefits and supplemental security income on March 20, 2006. (Tr. 200-6). Plaintiff alleges that she has been disabled since January 1, 1991, because she is a "slow learner."[1] (Id. at 76, 224, 321). Plaintiff's applications were denied at the initial stage, and she he filed a timely Request for Hearing before an Administrative Law Judge ("ALJ"). (Id. at 91-112). An administrative hearing was held before ALJ Ronald Reeves on October 12, 2010, which was attended by Plaintiff, her attorney, and vocational expert, Gail Jarrell.  (Id. at 37-56).[2] ALJ Reeves held a supplemental hearing on January 11, 2011, which was attended by Plaintiff, her attorney, and vocational expert, James Miller.  (Id. at 57-79).  On March 7, 2011, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 9-30).  Plaintiff's request for review was denied by the Appeals Council on July 9, 2011.  (Id. at 1-7).

---

[1] At the January 11, 2011, hearing, Plaintiff's counsel amended Plaintiff's alleged onset date to February 27, 2006. (Id. at 76).

[2] An administrative hearing was scheduled for March 20, 2008; however, Plaintiff did not appear. (Id. at 33-36). As a result, the ALJ dismissed Plaintiff's request for hearing. (Id. at 84-85). Plaintiff filed an appeal with the Appeals Council, who reversed the dismissal, and remanded the case so that hearing could be held before an ALJ. (Id. at 86-88, 103).

The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issue on Appeal

   Whether the ALJ erred in giving substantial weight to the opinions of non-examining psychologists while according little weight to the opinions contained in the medical source statement completed by consultative examiner Lucile Williams, Psy.D.

## III. Factual Background

Plaintiff was born on October 29, 1986, and was twenty-four (23) years of age at the time of the October 12, 2010 administrative hearing.  (Tr. 80-81, 126, 157).  Plaintiff received a certificate, as opposed to a diploma, upon completion of the 12th grade because she was not able to pass the graduation exam after multiple attempts.  Plaintiff has no past relevant work although in the past, she attempted, but was not successful, working at a car wash and in a restaurant as a cafeteria attendant.  (Id. at 72, 223-29).

At the October 12, 2010 hearing, Plaintiff testified that she was in special education classes, and that she suffers from migraine headaches.  (Id. at 43-47).  Plaintiff also testified that she has been receiving vocational rehabilitation, and while they have not yet secured a job for her, they did assist her in obtaining her driver's license.  (Id. at 50).  According to

Plaintiff, she drives to go shopping, and to pick her mother up from work.  (Id. at 50-51).

At the January 11, 2011 hearing, Plaintiff confirmed that she received a certificate rather than a high school diploma, and that her prior attempts at work were of limited duration and were not successful.  (Id. at 66-69).  Plaintiff also testified that she has been working with Goodwill/Easter Seals to try to secure a position. (Id. at 68).  According to Plaintiff, she has problems reading and writing, and she suffers from migraines and back/knee pain which she attributes to her flat feet.  (Id. at 71).  Plaintiff testified that she has a young child, for whom she cares, and that she also performs some household chores and helps to care for other children at the home.  (Id. at 69-70)

## IV. Analysis

### A. Standard Of Review

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[3]  A court may not decide the facts

---

[3] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163 (S.D. Ala. 1999).

    **B.**   **Discussion**

An individual who applies for Social Security disability benefits must prove his disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social

Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[4]

In the case sub judice, the ALJ determined that Plaintiff has not engaged in substantial gainful activity and that she has the severe impairment of borderline intellectual functioning. (Tr. 14-5). The ALJ found that Plaintiff does not have an impairment that meets or medically equals any of the listings

---

[4]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

6

contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Id. at 16).

The ALJ concluded that Plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but that she is moderately limited in her ability to maintain concentration, persistence, or pace, and is mildly limited in her ability to perform activities of daily living and in social functioning. (Id. at 19).

The ALJ found that Plaintiff has no past relevant work, and relying on the testimony of the VE, the ALJ concluded that, considering Plaintiff's RFC and vocational factors, such as age, education and work experience, Plaintiff is able to perform other jobs existing in significant numbers in the national economy such as kitchen helper, cleaner/housekeeper, and production assembler. (Id. at 24-25). The ALJ thus concluded that Plaintiff is not disabled.

### 1. Educational Records

The record includes various educational records. At age 13, Plaintiff was referred to Patricia B. Smith, M.Ed, for special education reevaluation by Pillans Middle School officials. (Id. at 275-82).  A Kaufman Adolescent and Adult Intelligence Test (KAIT) was administered to Plaintiff on August 2, 2000. Plaintiff received a crystallized scale IQ score (which measures acquired concepts and depends on schooling and acculturation for

7

success) of 69, a fluid scale IQ score (which measures the ability to solve new problems) of 86, and a composite intelligence scale score of 76. (Id. at 276, 278). Ms. Smith noted that Plaintiff was initially tested on July 18, 1996[5], and was subsequently placed in Specific Learning Disabilities classes. (Id. at 277). Ms. Smith opined that Plaintiff's composite intelligence IQ is in the fifth percentile and well below average. (Id. at 288).

Plaintiff was also administered the Devereux Behavior Rating Scale-School Form (DBRS-SF), which measures the extent of behaviors typical of children and adolescents with moderate to severe emotion disturbance. Plaintiff was rated as "normal" in all areas. (Id. at 280-81). Ms. Smith observed that there was a significant discrepancy between Plaintiff's overall ability level and achievement in the area of written expression and that she was performing commensurately with her overall ability level in all other areas assessed. (Id. at 281). She recommended that special education reevaluation occur within thirty-six months. (Id. at 282).

---

[5] Plaintiff's earlier tests include the Wechsler Intelligence Scale for Children, 3rd edition (WISC-III), wherein she received a verbal IQ score of 62, a performance IQ score of 78, and a full scale IQ score of 68. On the Kaufman Assessment Battery for Children (K-ABC), Plaintiff scored 91 in sequential processing, 85 in simultaneous processing, and 86 on mental processing composite. (Tr. 277).

The school records reflect that after multiple attempts, Plaintiff failed all parts of the high school graduation exam, except for Science. Thus, upon completion of high school, she received a certificate rather than a diploma. (Id. at 270-73).

**2. Lay Statements**

The record contains a letter dated August 31, 2006, and written by James Flora, M.A., L.P.C., who is with the Independent Living Center of Mobile. (Id. at 247). In the letter, Mr. Flora advises that Plaintiff was provided an independent living plan at intake on August 29, 2006, and stated that her stated goal was to obtain Social Security benefits to increase her income. (Id.). According to Mr. Flora, Plaintiff's mother provided information regarding Plaintiff's difficulties in learning, reading and comprehension, counting money, and keeping pace in a work setting, as well as Plaintiff's problem with migraine headaches and her emotional issues. (Id. at 247-9).

**3. Medical Evidence**

At the request of the Agency, Medical consultant Ellen N. Eno, Ph.D. (hereinafter "Dr. Eno"), reviewed Plaintiff's file, and completed a Psychiatric Review Technique dated July 10, 2006. (Id. at 309). Dr. Eno diagnosed Plaintiff with specific learning disability, and opined that Plaintiff is moderately limited in maintaining concentration, persistence, and pace and

9

is mildly limited in activities of daily living and in maintaining social functioning. (Id. at 310, 319-21). She opined that Plaintiff does not suffer any episodes of decompensation. (Id. at 319).

In a Mental RFC Assessment completed on the same day, Dr. Eno opined that Plaintiff is moderately limited in understanding and remembering detailed instructions, carrying out detailed instructions, and maintaining attention and concentration for extended periods. (Id. at 323). She further opined that Plaintiff is not significantly limited in remembering locations and work-like procedures, understanding and remembering very short and simple instructions, carrying out very short and simple instructions, performing activities within a schedule, maintaining regular attendance, and being punctual with customary tolerances, making simple work-related decisions, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintaining socially appropriate behavior and responding appropriately to changes in the work setting. (Id. at 323-25).

The record also contains treatment notes from USA Family Practice covering the period March 1, 2007 through November 13,

10

2008. Plaintiff was treated for problems with migraines and for routine gynecological matters. (Id. at 327-36).

Medical consultant Linda Duke, Ph.D. (hereinafter "Dr. Duke"), reviewed Plaintiff's file at the request of the Agency. (Id. at 337-50). On July 22, 2009, Dr. Duke completed a Psychiatric Review Technique and diagnosed Plaintiff with specific learning disability. (Id. at 338). Dr. Duke opined that Plaintiff is mildly limited in maintaining concentration, persistence, and pace, in activities of daily living and in maintaining social functioning. (Id. at 347). She opined that Plaintiff has not experienced episodes of decompensation. (Id.).

At the request of the Agency, Plaintiff underwent a physical examination by Dr. Henrietta Kovacs on August 28, 2009. (Id. at 351-56). Dr. Kovacs' notes reflect that Plaintiff's chief complaint was her "learning ability" and that Plaintiff's mother was the primary source of information. The physical examination of Plaintiff was essentially normal. Dr. Kovacs diagnosed Plaintiff with learning disability, the exact nature of which is unknown, obesity, flat feet, history of intermittent low back pain, and a history of migraines. (Id. at 353).

The record also contains treatment notes from Franklin Primary Health dated February 5, 2010 through April 8, 2010. The

11

records reflect that Plaintiff was provided medication for migraine headaches. (Id. at 395-401).

Jennifer Adams, Ph.D. (hereinafter "Dr. Adams"), conducted a psychological evaluation of Plaintiff on September 1, 2010. (Id. at 411). On exam, Plaintiff's mood was mildly dysphoric, and her affect was flat. (Id.). She was not conversant but answered questions adequately. (Id.). Plaintiff was administered the Wechsler Adult Intelligence Scale, 4th edition (WAIS-IV). She obtained a Full Scale IQ of 77, which places her in the borderline range of intellectual functioning. (Id. at 412). Her areas of weakness were noted as verbal comprehension, which is in the mildly mentally retarded range. (Id.). Her area of strength was in processing speed, which was at the high end of the average range. (Id.). Dr. Adams opined that Plaintiff's demeanor suggested that she was not putting forth good effort, but her high processing speed score indicated good effort. (Id.).

Dr. Adams diagnosed borderline IQ and assigned a GAF score of 65.[6] (Id. at 413). She opined that Plaintiff will have

---

[6] The Global Assessment of Functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians that measures a patient's overall level of psychological, social, and occupational functioning on a hypothetical continuum. A GAF score of 41-50 indicates serious symptoms indicative of antisocial behavior (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious social dysfunction (Continued)

difficulty in jobs requiring reading or other verbal skills but that Plaintiff should be able to benefit from hands-on training opportunities. (Id. at 413).

Lucile T. Williams, Psy.D (hereinafter "Dr. Williams") examined Plaintiff at the request of the Agency on September 28, 2010. (Id. at 404-10). Plaintiff and her mother reported that Plaintiff is unable to work due to migraines, pain in her left knee and back, and pain in her foot due to a lack of an arch, and that she is a "slow learner". (Id. at 405). Plaintiff's mother also indicated that Plaintiff requires close supervision in completing tasks and that she is easily frustrated when she is unable to perform a task. (Id.).

On exam, Plaintiff was oriented to person, time, and purpose but not place. (Id.). Plaintiff was unable to subtract serial twos from 10 but successfully counted backward from 20 to 1 and spelled the word "world" forward and backward. (Id.).

---

(e.g., no friends, unable to keep a job). A GAF score of 51-60 suggests moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). A GAF score of 61-70 is indicative of mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. See http://www.gafscore.com/. (Last visited June 10, 2012).

When her immediate memory was tested, Plaintiff was able to recall 4 digits forward and 2 digits backward and could recall 3 of the 3 words immediately and none of the 3 words after five minutes. (Id.). Regarding her general fund of information, Plaintiff was unable to name the governor of Alabama, the capital of Alabama, or the U.S. President, but was able to identify the number of months in a year and the colors of the U.S. flag. (Id. at 406). Dr. Williams noted that Plaintiff's thoughts processes were grossly intact and that no loose associations tangential, or circumstantial thinking were observed. (Id.). Plaintiff did not appear confused; conversation was normal; and rate of speech was within normal limits. (Id.). No ideas of reference, phobias, obsessions or compulsions were noted. (Id.).

Dr. Williams administered the Wechsler Intelligence Scale, 4th edition (WAIS-IV). Plaintiff's composite scores for verbal comprehension, perceptual reasoning, working memory, and processing speed were 61, 81, 71, and 89, respectively. She received a full scale score of 71. (Id.).

Dr. Williams diagnosed Plaintiff with borderline intellectual functioning, and opined that no change would be expected. (Id. at 407). She opined that Plaintiff would be unable to manage her own funds, but that she generally understood instructions readily, displayed an appropriate

14

attitude, maintained good effort and interest and seemed motivated to do her best during the evaluation, was cooperative, recognized errors and appeared socially confident and comfortable. (Id. at 406-07).

In a medical source statement dated October 6, 2010, Dr. Williams opined that Plaintiff's ability to understand, remember, and carry out instructions was affected by her impairments and that she is moderately limited in her ability to understand and remember simple instructions, carry out simple instructions, and to make judgments on simple work-related decisions. (Id. at 408). She further opined that Plaintiff is markedly limited in her ability to understand and remember complex instructions, carry out complex instructions and make judgments on complex work related decisions. (Id.). Dr. Williams further opined that Plaintiff is markedly limited in her ability to interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in a routine work setting. (Id. at 409).

> 4. **Whether the ALJ erred in giving substantial weight to the opinions of non-examining psychologists while according little weight to the opinions contained in the medical source statement completed by consultative examiner Lucile Williams, Psy.D.**

In her brief, Plaintiff asserts that the ALJ erred in giving significant weight to the opinions of Agency

psychologists, Dr. Eno and Dr. Duke, and according little weight to the opinions expressed by consulting examiner, Dr. Williams. According to Plaintiff, Dr. Williams was the only doctor who examined her and who considered the totality of all the evidence; thus, her opinion is entitled to greater weight. (Doc. 12).

In opposition, the Commissioner argues that the ALJ properly evaluated the medical opinion evidence, including opinions from Drs. Eno, Duke, Adams, and Williams. According to the Commissioner, the ALJ noted that his mental RFC assessment was supported by and consistent with Dr. Williams' clinical findings and observations, and that the opinions contained in the medical source statement completed by Dr. Williams were not consistent with her own clinical findings and observations. (Doc. 13).

The ALJ is responsible for determining a claimant's RFC by considering all relevant medical and other evidence. See Phillips v. Barnhart, 357 F. 3d 1232, 1238-39 (11th Cir. 2004). The ALJ must state with particularity the weight given different medical opinions and the reasons for doing so. Sharfarz v. Bowen, 825 F. 2d 278, 279 (11th Cir. 1987). The ALJ may reject any medical opinion if the evidence supports a contrary finding. Id. "[C]hoosing between conflicting evidence is a task peculiarly suited to the fact finder [that is, the

16

Commissioner], and [the court] will not disturb such a determination on appeal." Landry v. Heckler, 782 F. 2d 1551, 1554 (11th Cir. 1986).

As noted, the ALJ concluded Plaintiff has the severe impairment of borderline intellectual functioning but determined that she is not disabled. In reaching this conclusion, the ALJ considered the medical opinions of Dr. Adams, Dr. Eno, Dr. Williams, and Dr. Duke. Dr. Williams' examination notes and clinical findings were consistent with the ALJ's RFC determination and the other medical evidence in the record. However, the opinions contained in Dr. Williams' medical source were was not consistent with her own examination notes nor the other medical evidence in the record. Thus, the ALJ gave little weight to the opinions contained in Dr. Williams' medical source statement and observed as follows:

> A medical source statement of the claimant's mental capacity to function was also provided by Dr. Williams. The claimant was assessed with moderate limitations in understanding, remembering, and carrying out simple instructions, and marked limitations with complex instructions and decisions. However, the claimant was also found to have marked limitations in her interactions with the public, supervisors, and coworkers, as well as in her ability to respond appropriately to usual work situations. There were no medical signs, laboratory findings, or clinical evidence noted in support of this degree of limitations noted. This assessment is also inconsistent with the findings contained in the consultative

17

> examination performed by Dr. Williams, as well as the claimant's school records, vocational rehabilitation records, and the consultative examination. The behavioral observations fail to reflect evidence, which support the marked limitations in functioning assessed (Exhibit 12F). While the evidence provided in the examination report was found to be persuasive, the cursory medical source statement provided by Dr. Williams lacked objective support and is inconsistent with the examination report provided by Dr. Williams. Therefore, the medical source statement was afforded little weight as inconsistent with the full record.

(Tr. 22).

Here, it is clear that the ALJ did not reject all of Dr. Williams' opinions. Rather, he found Dr. Williams' examination report to be consistent with the other record evidence. It was the extreme limitations contained in Dr. Williams' medical source statement that the ALJ accorded little weight because they were inconsistent with Dr. Williams' own medical findings and the record as a whole, and they were not supported by any objective medical evidence in the record. Specifically, upon examining Plaintiff, Dr. Williams noted that Plaintiff's thoughts processes were grossly intact and that no loose associations, tangential, or circumstantial thinking were observed and that Plaintiff did not appear confused; her conversation was normal; and her rate of speech was within normal limits. Further, Dr. Williams observed that Plaintiff generally understood instructions readily, displayed an

appropriate attitude, maintained good effort and interest, was cooperative, recognized errors and appeared socially confident and comfortable. These findings are wholly inconsistent with someone with marked limitations in her ability to interact appropriately with supervisors, coworkers, and the public, or respond to changes in a routine work setting.

The ALJ assigned great evidentiary weight to the findings and opinions of medical consultant Dr. Adams, who examined Plaintiff. Dr. Adams noted that during the examination, Plaintiff was not conversant but she answered questions adequately. Dr. Adams noted that Plaintiff's full Scale IQ was measured as 77, placing her in the borderline range of intellectual functioning, and opined that Plaintiff would have difficulty in jobs requiring reading or verbal skills; she also opined that Plaintiff should be able to benefit from hands-on training opportunities. In addition, Dr. Eno and Dr. Duke also opined, after a review of Plaintiff's file, that she is mildly limited in maintaining social functioning. It is also noteworthy that the record is devoid of any testimony or any other evidence indicating that Plaintiff has marked restrictions in her social functioning. Although the record reflects that Plaintiff has borderline intellectual functioning and Plaintiff testified that she had two unsuccessful attempts at work, she does not allege, and the record does not reflect that Plaintiff

had any problems relating to people. In view of the record evidence, including Dr. Williams' written evaluation dated September 28, 2010, the ALJ did not err in according little weight to the extreme limitations contained in Dr. Williams' medical source statement dated October 10, 2010. Accordingly, the undersigned finds that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence.

## V.  Conclusion

For the reasons set forth above, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits and supplemental security income, be **AFFIRMED**.

**DONE** this **20th** day of **September, 2012.**

>            /s/ SONJA F. BIVINS
> **UNITED STATES MAGISTRATE JUDGE**